## UNITED STATES *v.* FRITZSCHE BROS., INC.

**No. 6646.**—Invoice dated Amritsar, India, February 1945.
Certified February 1945.
Entered at New York, N. Y., June 12, 1945.
Entry No. 735521.

### Second Division, Appellate Term

(Decided December 19, 1946)

*Paul P. Rao*, Assistant Attorney General (*Daniel I. Auster*, special attorney) for the appellant.

*John D. Rode* for the appellee.

Before TILSON, KINCHELOE, and LAWRENCE, Judges

TILSON, Judge: This application for a review of the decision and judgment of the trial court was filed under the provisions of section 501 of the Tariff Act of 1930. The merchandise consists of 184½ ounces of musk pods, which are in fact glands taken from the musk deer in the Tibetan Himalayas, and was exported from India.

The record shows that the merchandise was contracted and paid for at $21 per ounce on the basis of 200 ounces "net weight of goods in their original state at time of shipment to New York by parcel post," and that no rebate, refund, or allowance of any kind was made by the exporter by reason of the fact that only 184½ ounces were actually received by the importer. The record also shows that the difference of 15½ ounces between the amount shipped and the amount received was due to evaporation of moisture during the voyage of importation.

The merchandise was entered at a value of $20 per ounce, plus 9 cents per ounce for packing, and it was appraised at $20 per ounce, plus 8.40108 per centum, plus packing, on the basis of export value. During the trial of the case counsel for the Government admitted that the 8.40108 per centum advance over the *per se* entered value was made because in the opinion of the appraiser the merchandise had increased in value during the voyage of importation by reason of the loss of weight. The evidence offered by the importer was directed to establishing that the loss in weight during the voyage of importation had not increased the value of the merchandise, but had in fact decreased its value.

It was agreed between counsel that the export value of the merchandise was higher than the foreign value of such or similar mer-

chandise. The trial court properly concluded that the above stipulation eliminated from its consideration any question concerning foreign value. As the issue was joined before the trial court, the only question presented for its determination, and consequently the only question presented here for review, was whether or not the value of the merchandise should have been increased by 8.40108 per centum on the theory that the merchandise had increased in value by reason of the loss in weight.

On the "Summary of Examination and Appraisement" under the heading of "Remarks" the appraiser cites "Sec. 14.3 (e) C. R. 1943 applies." This section of the customs regulations reads as follows:

When merchandise subject to an ad valorem rate of duty has decreased in weight by reason of evaporation or otherwise, and the value of the unit of quantity has correspondingly increased, such advance shall not be deemed an advance in value for the purpose of assessing additional duty.

Since this record shows that while the merchandise did decrease in weight during the voyage of importation, but that the value of the unit of quantity had definitely not correspondingly increased, the above regulation is no authority for the advance in value of 8.40108 per centum.

The only item in the appraisement of the merchandise in this case which was challenged by the importer was the addition of the 8.40108 per centum to the entered value. In dealing with a similar situation in *United States* v. *Freedman & Slater, Inc.*, 25 C. C. P. A. 112, our appellate court held that:

When the appraisement first came before the trial court, it must be presumed that the appraisement and all items thereof constituted the true valuation of the merchandise and the burden rested upon the party who challenged its correctness or the correctness of any of its items to prove otherwise. (Sec. 501, Tariff Act of 1930.)

In view of the state of this record, the fact that the importer has challenged the item of 8.40108 per centum does not overcome the presumption of correctness of that item. The evidence introduced by the importer, however, did overcome the presumption of correctness in favor of that item. Likewise the fact that the importer has challenged the item of 8.40108 per centum does not destroy the presumption of correctness of all items constituting the true valuation of the merchandise, and since no evidence was offered to overcome any of the other items, these other items must stand as presumptively correct.

In view of the fact that the only difference between the values claimed by the parties is the 8.40108 per centum advance made by the appraiser on account of shrinkage on the voyage of importation, it logically follows that the appraiser found that the entered value of

$20 per ounce represented the value of the merchandise before shrinkage.

In the course of its decision the trial court made the following findings:

Competent witnesses for the plaintiff established that in the purchase and sale of musk pods in India the moisture content of the pods is not a factor; that the unit of purchase is the ounce, and that the purchaser assumes the risk of loss by evaporation after shipment, no allowance being made by reason of the receipt of a lesser quantity due to shrinkage on the voyage of importation.

It is likewise clear from the record that the loss of moisture does not result in an increase in value in musk pods since the evaporated portion contains some of the odoriferous constituents which are the most valuable parts of the musk.

·· The record amply supports the above findings by the trial court, which, in our opinion, constitute the crux of this case. As the issues have been joined, this case presents only a question of fact, and all the evidence on this question of fact is in favor of the importer.

Upon a consideration of the record in this case we find as facts.:

1. That the imported merchandise consists of 184½ ounces of musk pods exported from India and entered at New York on June 12, 1945.

2. That the quantity of musk pods exported from India was 200 ounces; that during the voyage of importation, due to shrinkage and evaporation, this quantity was reduced by 15½ ounces and that only 184½ ounces of musk pods arrived at New York.

3. That in the sale and purchase of musk pods in India the unit of quantity is the ounce.

4. That while the merchandise did decrease in weight during the voyage of importation due to evaporation or otherwise, the unit of value definitely did not correspondingly increase.

5. It being conceded that the export value is higher than the foreign value, no question of foreign value is presented for determination.

6. That the appraiser appraised the merchandise at the entered unit value of $20 per ounce, plus packing, and to this amount he added 8.40108 per centum for shrinkage.

We, therefore, conclude as matter of law that the judgment of the trial court is amply supported by the evidence, and it is accordingly affirmed.

Judgment will be rendered accordingly.